

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. WR-90,986-01

### EX PARTE STEVEN CRAIG MALLET, Applicant

### ON APPLICANT'S APPLICATION FOR A WRIT OF HABEAS CORPUS
### IN CAUSE NO. 1230338-A FROM THE
### 178TH DISTRICT COURT OF HARRIS COUNTY

RICHARDSON, J., filed a concurring opinion, in which HERVEY, NEWELL, and WALKER, JJ., joined.

### CONCURRING OPINION

I concur with this Court's order granting relief to Applicant and write separately to highlight the ways in which Applicant has met the standard for actual innocence.

Applicant was charged with delivery of a controlled substance in Penalty Group 1, less than 1 gram based on an alleged transaction on April 29, 2008. Applicant pled guilty and was sentenced to ten months in state jail. But the charge and conviction in his case, like those in the case of his brother, Otis Mallet, were based on perjured testimony of former Detective Gerald Goines of the Houston Police Department that he had a "pre-

arranged" drug buy with Applicant and paid Applicant $200 in exchange for a "quarter." The State, trial court, and habeas court now agree, based on Goines's expense reports in this case and recently discovered dishonesty in other cases, that there is compelling evidence the drug transaction never occurred, and that Applicant, like his brother, is actually innocent.

The facts of Applicant's case are inextricably intertwined with those in Otis's case, and the court in Applicant's case specifically found "the Findings of Fact and Conclusions of Law in Otis's writs to be credible and compelling and they are considered evidence in the instant matter." Moreover, the court explained that "[t]he Court reviewing Otis's claims concluded that the 'entire alleged narcotics transaction was a fraud.' This same fraud infects Steven's case and conviction." We reiterate those facts here. Former Detective Goines testified that he paid $200 to Applicant, who gave the money to Otis, who retrieved crack cocaine from a blue can that Applicant then delivered back to Goines. Goines testified that as officers moved in to make their arrest, Otis removed the blue can from his truck and put it in his neighbor's backyard. Goines also testified that he used "police money" for which no accounting was necessary. Otis's new attorneys discovered a sworn expense report filed by Goines that shows Goines did not use $200 in April 2008 to purchase narcotics, and another report from May 2008 that shows he allegedly paid a police informant $200 for information which led to Otis's arrest. These facts, which were not in the police report and were not testified to at trial, contradict Goines's testimony. Moreover, the offense report indicates that the drug-sniffing dogs did not alert on Otis's truck, from which the drugs were allegedly removed.

All of the other witnesses testified to the exact opposite—that they did not find or see any drugs on Applicant or on Otis. When asked if he saw Otis with any drugs at all, Officer Raleigh Jordan answered, "No," and when asked if he saw Applicant that night, he answered, "No." In fact, when asked if he saw any transaction at all, Officer Jordan also responded, "No." Likewise, when Officer Kendric Stringfellow was questioned about whether he found "any contraband on [Otis], any drugs, anything of that nature," he stated, "No." Sharmi Patel, an employee in the crime lab of the Houston Police Department also testified that she tested the drugs but did not know who the drugs belonged to. Moreover, witness Donna Jean Massey, who was living at the location of and present during Otis's arrest, testified that she had been outside for about 15 or 20 minutes before the arrest and never even saw Otis with a can, never saw any drugs or drug transaction, never saw Applicant hand drugs to an officer, and never saw Otis hand any drugs to Applicant; the only thing she saw in Otis's hand was a phone. Witness Lester Eugene Locking, Otis's neighbor who witnessed Otis's arrest, testified that he had been outside talking with witness Massey for 15 minutes before the officers showed up and that he was sure he did not see Otis walk from his truck into the backyard carrying a cookie can or a can with drugs in it and that he never saw Otis selling drugs to anybody. Otis testified that he did not have any drugs on him or in his truck, that he did not know anything about a blue container, and that he was at the house because he ran his scrap metal business from there and had a receipt for all of the cash in his pocket. He maintained his innocence throughout, and at sentencing, Otis's attorney reiterated Otis's innocence. Applicant testified that when officers pulled him over and searched him, all they found was 35 cents in his pocket. He denied having

met or spoken with Goines, having received $200 from Goines to give to Otis, having approached Otis to buy cocaine for undercover officer Goines, and having seen Otis with a blue can. Applicant also refused to take an earlier plea offer that would incriminate his brother.

At the hearing on Otis's post-conviction writ, the trial prosecutor in his case testified by affidavit that Goines was the State's primary witness at trial, and "[s]imply put, there was no case without him." She also testified that she was unaware of the expense reports for April 2008 and May 2008, and "[had she] known about them prior to trial, [she] would have disclosed them to defense counsel" and "would have asked a supervisor to dismiss the cases." In fact, during the first writ hearing, the State requested a continuance to have the canister inspected for Otis's fingerprints, since Goines claimed Otis had his fingers all over the canister. That inspection concluded Otis's prints were not on the canister. Following that inspection, in the final writ hearing, the representative for the state reemphasized that Officer Goines was the only witness who claimed to see Otis in the neighbor's backyard where the blue can was found. Finally, the State also represented, "we agree that Otis Mallet is actually innocent. And this is a rarity to date in our system. . . . I want to emphasize to the Texas Court of Criminal Appeals my interest at our overriding prosecutorial and the people's interest in seeking justice, not just convictions. And the injustice that was done in this case deserves relief."

It is telling that Goines—the State's sole fact witness at trial and the only witness who said he saw a drug deal on the date of Otis's arrest—refused to testify by asserting the Fifth Amendment at the hearing on Otis's post-conviction writ when asked to explain facts

pertinent to the underlying offense. In referring to the state and federal indictments in a nationally-publicized, botched no-knock drug raid in which officers were executing a search warrant based on a false affidavit signed by Goines, the habeas judge noted, "It is so sad that two people had to lose lives – and I'm referencing the other cases – in order to shed light to many injustices associated with Goines." She also stated the Court's conclusion that "Goines falsely provided testimony regarding the use of police money and questionably affected the judgment of the jury. And lastly, that this Court will – will suggest to the Texas Court of Criminal Appeals that [Otis is] actually innocent. The Court concludes that Mr. Mallet meets the Herculean burden to demonstrate that he is actually innocent."

The habeas court in Otis's case found that "the only witness who testified that Otis Mallet or his brother were involved in a drug transaction was Officer Goines." The court highlighted that the prosecution's closing focused on Goines' credibility and reputation, and the prosecution—not knowing that Goines was lying—argued that "the case came down to who was telling the truth: the police and Officer Goines, or Mr. Mallet and the defense witnesses." The court emphasized that "based on the new facts discussed below, the Court finds that Officer Goines [sic] testimony was false," and "Officer Goines [sic] refusal to testify in support of his previous testimony advances that he testified falsely in Mr. Mallet's case." Finally, the court pointed out "that there is no credible evidence linking Mr. Mallet to the blue can, the possession of crack cocaine, or the transfer of crack cocaine. Without Officer Goines' testimony, and considering the new evidence currently before the

Court, no reasonable juror could have convicted Mr. Mallet of either possession or of the delivery of crack cocaine."

In *Ex parte Elizondo*, we explained that to be declared actually innocent, "an applicant must prove by clear and convincing evidence that no reasonable juror would have convicted him based on the newly discovered evidence." 947 S.W.2d 202, 205 (Tex. Crim. App. 1996). So it is here. The testimony and evidence that suggested Applicant was involved in a drug transaction have been proven false. Indeed, the court in Applicant's case concluded that Applicant would not have known of the existence of the false evidence even with the exercise of due diligence, the entire alleged narcotics transaction was a fraud, and Applicant is actually innocent.

While Applicant did enter a guilty plea, this Court has explained that "[t]he decision to plead guilty … may be influenced by factors that have nothing to do with the defendant's guilt. The inability to disprove the State's case, the inability to afford counsel, the inability to afford bail, family obligations, the need to return to work, and other considerations may influence a defendant's choice to plead guilty or go to trial." *Ex parte Tuley*, 109 S.W.3d 388, 393 (Tex. Crim. App. 2002). Moreover, "[a]n innocent person may want to take advantage of a discounted sentence in a plea bargain, rather than gamble on a far greater sentence if a mistaken verdict is returned." *Id.* at 393, n.2. Such factors played a significant role here, as evidenced by two sources: (1) Applicant's oral testimony during Otis's trial, and (2) Applicant's sworn affidavit. During Otis's trial, Applicant testified that he accepted a plea because he was told he would be able to get out of jail sooner. Applicant also testified by affidavit that he pled guilty "because they offered me a deal so that with the jail credit

I had, I would get out in a few days. My other choice was to schedule a trial, but that would have required me to stay in jail much longer, with no guarantee that a jury could be persuaded that Goines was lying." He further testified, "if I had known about the sworn expense accounts, I could have proven that Goines' account of the entire thing was false. In that case, I would have pleaded not guilty, and insisted on a trial, because the case would no longer have been decided solely upon Goines's word against mine. I would have had the proof that what he was saying about a drug transaction was completely false." The State agreed and stated "…in spite of that plea, because of the failure of the police officer to tell our prosecutor the truth about what really happened in this, whether there was a transaction or not, what type of money was used, whether there was an informant, that that failure caused our office to be used as a tool to wrongfully convict Steven Mallet as well as Otis Mallet."

A police officer's deceit, perjury, and continued wrongdoing lie at the heart of this case. This Court's precedent and the complete lack of evidence here demand actual innocence relief. Anything less will subject Applicant to further unfair treatment, including but not limited to potential enhancements on other charges and difficulties obtaining employment. As the final arbiter of criminal cases in Texas, this Court cannot stay silent in the face of such unmistakable injustice.

With these thoughts, I concur in the Court's order.

FILED:      April 14, 2021

PUBLISH